**04 MBD 10301**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO 04-

HEIDI K. ERICKSON
  Plaintiff

*Ex parte*

EMERGENCY REQUEST TO ALLOW
PETITIONER TO FILE
TEMPORARY RESTRAINING ORDERS
& for Relief

COMMONWEALTH OF MASSACHUSETTS,
MASS. DEPARTMENT OF AGRICULTURE,
BRAD MITCHEL
ANIMAL RESCUE LEAGUE
ALAN BORGAL
MARTHA SMITH
PAUL BRENNAN. ET AL
  Defendants

*October 14, 2004*
*The motion for a temporary restraining order is denied.*
*William G. Young*
*Chief Judge*

PARTIES

COMM OF MASS 1 Ashburton Place, Boston,
MASS DEPT of AGRICULTURE (MDA), 251 Causeway Street, Boston, MA Brad Mitchell Director of Animal Welfare Bureau of MDA.

ANIMAL RESCUE LEAGUE, Alan Borgal, Martha Smith (has agreed to euthanize all Plaintiff's Persians)
PAUL BRENNAN, CHAIRMAN OF THE BOARD 10 Chandler st. Boston, MA

1. PETITIONER, Plaintiff, files this request pursuant to Orders issued by Federal Justice Woodlock (See appended at A). Requests this Emergency Orders for TRO as the State (Commonwealth of Mass. Department of Agriculture) has ordered the Euthanasia of all her valuable beloved Persian cats, taken unlawfully during a defective search warrant by the orders of Alan Borgal (Animal Rescue League and Special State Police Officer).

2. Plaintiff apologizes to this Honorable Court as she had worked on this Petition for hours this afternoon 12 pm until 3 to perfect this pleading until her computer crashed and did not save the final document where Plaintiff's argument more fully expresses the legal arguments of her federal rights.

3. Pursuant to Judge Woodlock's finding in an associated case (04-11607) she sought relief from the State Superior and Appeals Court. During the same time but unrelated to Judge Woodlock's Order Plaintiff's criminal defense attorney sough an order to Preserve Evidence taken during the defective seizure and used to charge Plaintiff with animal cruelty. Defense attorney Brownsberger sought extraordinary relief at the Supreme Judicial Court in Boston and was denied at 1:30pm this afternoon docket SJ 2004-0417

see attached brief PART III. There is no reasonable way to seek relief but in this court today through this motion.

4. Additionally, at 3:15pm the Appeals Court denied Plaintiff's request for relief docketed as J 2004 -496. Therefore, with the scheduling of the euthanasia October 15th, 2004 an order from this Court to stay the euthanasia until a proper filing for just compensation is sought.

5. Plaintiff, Your Petitioner sought just compensation from the "taking" and argues this in Part II herein to be more fully developed in a to be filed Preliminary Injunction.

6. Plaintiff sought just compensation from the arbitrary and unreasonable decision of the Director of the Ma. Dept. of Agriculture argued in Part I herein.

7. Part III is the attachment of the Brief Plaintiff's defense attorney filed in the SJC seeking relief docketed as SJ 2004- 0417.

8. Plaintiff states that pursuant to the Federal Takings Clause and the 14th Amendment she has sought due process of law in the State Court, and requested just compensation from the Defendants where none has been available to Plaintiff, not even an evidentiary hearing while the State Court refuses to acknowledge Plaintiff's due process rights and her property interests. (See MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (Ex 1). Issued by Judge Suffolk Superior Court, Boston, MA on 9/10/04 because of the numerous errors in said memorandum Plaintiff requested a Reconsideration.

9. On 9/24/04 Suffolk Superior Court reconsidered the Plaintiff's ARGUMENT IN SUPPORT OF RECONSIDERATION (Ex. 2) and issued DECISION OF THE COURT ON PLAINTIFF'S MOTION FOR RECONSIDERATION (Ex 3) issued by the Suffolk Superior Court filled with conjectures "Plaintiff's newly argued property interests" that property interests were attested to in Affidavit Heidi Erickson submitted to the Suffolk Superior Court on 9/8/04 and in pleadings submitted on 8/24/04 which were similar to pleadings in front of Judge Woodlock 04-11067. Suffolk Superior Court finds that Plaintiff's "proposed methods [for compensation] too speculative" but fails to making finds as to what is speculative as everything Plaintiff submitted is accepted scientific and medical fact commercially available not science fiction.

10. The Plaintiff's arguments were biasedly discredited when the Suffolk Superior Court found that the {Director] received adequate and credible information to exercise that discretion by ordering the destruction of the cats in question "*As I see the current state of Mass. law, the discretion given to the Director to act in the public interest to protect the public from animal diseases, when properly documented, as here carries the day.*" The Court adds Footnote "*The Plaintiff argues that the Director acted in the public interest, but exclusively for the interests of the Animal Rescue League, who currently hold the cats. There is, however, no **tangible evidence**, by affidavit or otherwise, to support this allegation*". Plaintiff then refiles an EMERGENCY RECONSIDERATION, attaching

the "*tangible evidence*" see letter from Defendant as Judge stated wasn't but is. The Letter from the Director states in pertainent part "*As the maintenance of the existing quarantine is a significant burden to the Animal Rescue League, the Department will give you until September 30th, 2004 to meet the requirements set forth concerning the transfer of quarantine. If you are unable to satisfy these requirements by this date to the satisfaction of the Department, **the Order of Euthanasia will be acted on**"*. The Suffolk Superior Court then makes a finding without using the standard to which is applied when the EVIDENCE is present thereby the state court rejects plaintiff's interests and states "*Denied w/o a hearing as to any reconsideration of my decision to deny a PI to pl. has already had on reconsideration hearing on 9/24/04 and no second reconsideration hearing on this issue is required*". Basically the Court has refused to consider Plaintiff's arguments as it refuses to read them and review the evidence. Nothing can be more clear and in with the argument that the Director makes the decision to euthanasia in hast as because of the Animal Rescue League's burden not the burden on the public good from the spread of the disease.

11. Breaking down the Director's authority pursuant to GL 129 sec 2 and 11 GL ch 129 sec 2 Authorizes the "Director ... to **enforce reasonable orders** ... relative to the **prevention, suppression** and extirpation of **contagious disease**..." to act in the public's interest with a broad discretionary power. This discretion cannot be arbitrary and a risk analysis must be balanced where the interests of the risk to the public's health and safety is balanced with the interests of the owner.

12. This case presents a misguided balancing, where in at least this instance the risk of health and safety is in fact a private risk not a public one. The fact that issuing orders to euthanized a group of privately owned purebred Persians sets a precedence in this the United States. The disease if possible to be transmitted maybe transmitted to individuals not to the unwitting public, and if transmitted is nothing more then a mild skin rash less harmful then second hand smoke. Microsporum canis is spread by direct contact (See Harrison's Principals of Internal Medicine, Affidavit Catherine Lund, DVM (Ex. 3) and Affidavit's Richard Fraser, MD (5).

13. The Director's "enforce reasonable orders" are not reasonable when there are alternative treatment methods raised by a credible and respected professional. "*There are many more rigorous treatment regimens that what these cats were given at the Animal Rescue League, and there is potential that the infections might clear with different and more systematic therapy.*" See *Affidavit and Supplemental Affidavit Catherine Lund, DVM* Para 3-5.

14. Reasonable Orders are rarely considered precedents. Both the US Department of Agriculture and the Centers for Disease Control has never had a reported case, nor have ever heard of a incidence of a domestic animal being euthanized because it had *microsporum canis*, or that it's *microsporum canis* rose the level requiring it to be euthanized as it was a threat to public health and safety. To order the euthanasia of a group of privately owned purebred, gentle and otherwise health and treatable Persians cats arbitrary and capricious. These cats are not "public risks".

First, public risks are threats to human health and safety, that are hazards with the potential to effect large groups of persons unwittingly exposed, like mass produced vaccines, chemical additives and contaminants in foods, or recombinant-DNA technology that is in the public realm. The in the public realm is an important feature.

15. Private risks by contrast, are discretely produced, localized, personally controlled, or of natural origin.

16. There has been no evidentiary hearing, no evidence of a risk analysis, nor credible proof that there really exists a 'public' health risks in the magnitude that "other reasonable methods" and interests trumps the lives of otherwise healthy animals in light of the risk of the legislative goals and moral responsibility of those who have been entrusted with the 'public good' in contrast to the legislation of anticruelty animal laws, the goals, mission statement and beliefs of the Massachusetts Society for the Protection of Cruelty to Animals, the Massachusetts residents who have devoted approximately 99 million dollars to the public charity whose goals for over the past 100 years are to rescue animals and provide medical/veterinary care and shelter.

17. There is a public outcry a 'shocking the conscious' (Ex 2) that the Director of the Bureau of Animal Welfare would order the euthanasia when a well respected expert in feline medicine has attested that *"I have specialized primarily in the treatment of cats since receiving my D.V.M. from Auburn University in 1986. I am a member of the American Association of Feline Practitioners. I am the immediate Past- President of the Rhode Island Veterinary Medical Association. A current copy of my resume is attached as Exhibit A and is a true and accurate reflection of my professional experience and credentials. I have reviewed medical records from the Animal Rescue League regarding Ms. Erickson's cats seized from her home on 5/7/03. On 3/16/04 I visited Ms. Erickson's cats held by the Animal Rescue League at 599 Washington St. in Pembroke and examined each. I have read the Massachusetts Department of Agriculture's letters and recommendations including Affidavit from Brad Mitchell regarding the quarantine of Ms. Erickson's cats held at the Animal Rescue League. I find no compelling reason to isolate these cats in a quarantine situation that which is proposed by the Department of Agriculture.* "*I find no medical reasons necessitating these cats' euthanasia, particularly with regards to their potential for spreading disease to people, [microsporum canis] ringworm is not fatal, and it is not painful; indeed most of Ms. Erickson's cats are asymptomatic but culture positive. There are many more rigorous treatment regimens that what these cats were given at the Animal Rescue League, and there is potential that the infections might clear with different and more systematic therapy."* See *Affidavit and Supplemental Affidavit Catherine Lund, DVM* Para 3-5 especially of Supplementalb

18. The Court refused to find, and doing so biased, that the Director's Orders unreasonable, arbitrary and not in the interest of the public good.

Plaintiff states the fact before the Director and the Court included verified Affidavits from practicing and Board Certified Feline Practitioner with 20 years of experience and former President of the Veterinary Association who attests that the cats are not a public health risk (Ex 4), where as the Director received an affidavit from a non-practicing staff veterinarian who supported her arguments from letters (not attested to statements of fact – first hand knowledge) unsupported and unverified. Second the Director received 2 affidavits from Richard Fraser, MD Board Certified Medical Examiner for the Commonwealth, Board Certified Internist who practices Occupational Medicine attesting to the fact that the cats were not a public health risk. (Ex 5)

19. Plaintiff states that she sought redress in the Massachusetts Superior Courts pursuant to GL 30A (Administrative Review) and GL 249 sec. 4 (Writ for Certiorari) on August 24th, 2004 and Massachusetts Appeals Court pursuant to GL 231 sec 118 on October 13th, 2004 until it became futile that the State Court will not redress the issues that were originally raised here. The state court ordered a stay until October 15th, 2004 to seek appellate review, despite the urgent nature, the appellate court has failed to issue a stay.

20. Plaintiff's requests if the issues of arbitrary government taking could not reverse the orders of euthanasia the only reasonable compensation for the taking of this valuable colony of irreplaceable genetically unique purebed, pedigreed, shown, microchipped Persians is to save the irreplaceable genetic qualities by DNA gene banking and cloning of the group of Persians. Cloning is now commercially available, acceptable science and recognized as a form of replacing the loss of a domestic cat(s) Leslie Lyons PhD, University of California at Irvine Director of the Feline Genome Project. Therefore raised again in the State Court following this Honorable Court decision and Orders of August 24th, 2004 requiring plaintiff to first seek state court redress "Erickson must pursue the matter in state court before it is ripe for federal court jurisdiction

1. Petitioner, Plaintiff and owner of 42 purebred Persian cats direct progeny (sons and daughters) of National Winner white Persians, and themselves genetically valuable equating over 15 years of work from Plaintiff (two PhD's in genetics one Harvard the other from the University of Chicago), 20 years of work from the other breeders of the National Winning cats and a lifetime of dedication from Plaintiff. Plaintiff a third generation Persian breeder whose ex-fiancee (Harvard PhD in genetics) co-owned bred and spent hundreds of hours on analyzing genetic inheritance information over the course of 3 years to develop these unique (valuable genetically) Persians who were hand selected, hand raised and have virtually unavailable genetic lineages has requested due process and other protections prior to the senseless euthanasia orders from the State (Ex. 0).

2. Judge Cratsley's error is not only of the weight given to the public interest but his concept of the public interest involved (i.e. public health and safety) it has not been proven that these cats are contagious, there has been no evidentiary hearing on the issue of public safety, risk of exposure, verified evidence of infectious

and/or contagiousness and therefore issue of Public Interest in the Legislative Intentions of the Anticruelty animal laws and the Public's Interest of their charitable dollars (99 Million) going to rescue and curing not euthanizing animals outweighs the Public Interest in Health and Safety of a relatively low infectious disease that is treatable (See Affidavit Richard Fraser, MD (Ex. ) (See Harrison's Principals of Internal Medicine).

3. All that is there is a one sided letter left uncrossed examined, not verified (See Affidavit Dr. Lorraine O'Connor who based a suspected contagion to humans from these Persians and is derived from a Defendant who has come to court with unclean hands and named by Plaintiff in a criminal complaint as to animal cruelty, the current condition of the cats a subject of evidence of animal cruelty and has told Plaintiff "under no conditions will we return your cats to you".

4. The Persian cats *are asyptomatic but test positive* (See Supplemental Affidavit Catherine Lund, DVM *I find no medical reasons necessitating these cats' euthanasia, particularly with regards to their potential for spreading disease to people.* Para 3.

5. As a matter of Law the Petitioner is entitled to an evidentiary hearing. Procedural due process has been regarded as requiring certain safeguards, such as the "right to be heard", "An essential principle of due process is that a deprivation of life, liberty or property be protected by notice and opportunity for hearing appropriate to the nature of the case. *Wolff v. McDonnell,* 418 US 539, 557-58 (1974)(hearing required).

PART II TAKING CLAUSE

Relief Sought

(1) Stay of ORDERS TO EUTHANIZE (Oct 15th) UNTIL HEARD ON ISSUES OR UNTIL FILINGS FOR PROPER Preliminary INJUNCTION

6

6. The Takings Clause, this clause was one of the least controversial provisions in the Bill of Rights, occasioning no recorded substantive comment at all" 76 Cal. L. Rev. 267, 283 (1988) <u>A Case Study in the Relationship Between Individual Liberties and Constitutional Structure</u>. "No person shall be ... obliged to relinquish his property, where it may be necessary for public use, without a just compensation". Treanor argues that James Madison, who proposed the Takings Clause intended the Clause to provide a narrow legal protection against direct physical takings, but also to serve at least symbolically a broader educative function, providing a moral protection for property. Both Justice Scalia and Justice Blackmun seem to agree that Madison meant the Takings Clause to offer legal protection only to direct, physical takings. See *Lucas v. S.C. Coastal Council*, 505 US 1003, 1028 (1992); id at 1057 (Blackmun, J. dissenting. Terminal destruction of Plaintiff's Persians is physical takings and an amoral course when other action can be tried when it has not *"There are many more rigorous treatment regimens than what these cats were given at the Animal Rescue League, and there is potential that the infections might clear with different and more systemic therapy"* Supplemental Affidavit Catherine Lund, DVM para 5.

7. Massachusetts Society for the Prevention of Cruelty to Animals 'Statement of Beliefs: "Euthanasia of Shelter Animals" MSPCA believes is wrong to kill animals needlessly. (Ex. )

1. Plaintiff recapitulates this Court's finding that the Dept. of Ag. advised by 4 vet.s, is not capricious to order the euthanasia unfounded as never in its history has it ever order the euthanasia of cats for ringworm Plaintiff notes none of actually 3 veterinarians is a specialist in cats like Dr. Lund Board Certified in Feline Medicine and former President of the R.I. Vet Ass. demonstrating the she is also highly respected by her peers.

2. Plaintiff requests that this Court reconsider it's denial, clarify the findings in particular to what this Honorable Court found in regards to Plaintiff's pleading especially her expert veterinarian who is more qualified to make individual assessments of Plaintiff's beloved Persian then any of the Defendant's (3) vet.s 2 of which have been named in criminal complaints brought by Plaintiff and the other named herein as a Defendant demonstratively are influenced in their assessment and can reasonably, and fairly be inferred to as biased.

In addition to Plaintiff's veterinarian Plaintiff submitted Dr. Fraser comprehensive affidavit, where as Dr. Fraser that euthanasia medically unfounded, who has been practicing medicine over 20 years, who knows the states sanitary code and has been practicing public health medicine and currently practicing occupational medicine

Respectfully Submitted
By [signature]
10-14-04

By Signature hereon I Certify under the penalties of Perjury that I file here today in Good faith.

7